UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 5:13-CV-00212

BOBBY MOSS                                                                                              Plaintiff,

v.

PENNYRILE RURAL ELECTRIC COOPERATIVE                                           Defendant.

## MEMORANDUM OPINION

This matter is before the Court upon the Motion for Summary Judgment of Defendant Pennyrile Rural Electric Cooperative ("Pennyrile"), (Docket No. 33). Pennyrile has also submitted a Motion for Judgment on the Pleadings, (Docket No. 31). Moss has responded, (Docket No. 39), and Pennyrile has replied, (Docket No. 46). Fully briefed, this matter is now ripe for adjudication. For the following reasons, Pennyrile's Motion for Judgment on the Pleadings will be GRANTED.

### Factual Background

Moss was hired as a warehouseman in Pennyrile's Russellville office on April 30, 1990; he worked for the company until his termination on September 16, 2011. (Docket No. 1 at 2.) Moss filed an EEOC complaint alleging violation of the Americans with Disabilities Act, retaliation, and disability on December 5, 2011. The EEOC issued a Right to Sue letter on August 22, 2012. Moss now alleges that Pennyrile transferred and terminated him in violation of the Americans with Disabilities Act.[1] (Docket No. 1 at 7-10.)

---

[1] Moss's Complaint also alleged wrongful termination and intentional infliction of emotional distress. However, Moss failed to address these counts in opposition to Pennyrile's motion for summary judgment. Because Moss did

1

Moss claims that during his twenty-one years of employment at Pennyrile, he was reprimanded on only one occasion before being diagnosed with a non-malignant brain tumor in August 2008. (Docket No. 1 at 2.) Moss alleges that his work life deteriorated dramatically upon his diagnosis, as Pennyrile began to treat him with antagonism. After three months of sick leave, Moss underwent surgery to remove the tumor on October 2008. (Docket No. 1 at 3.) He returned to work on November 26, 2008. (Docket No. 1 at 3.) On December 26, 2009, he suffered a grand mal seizure. He returned to work on January 4, 2010, but was unable to operate a vehicle for three months following his seizure. (Docket No. 1 at 3.) Although his job description required a Commercial Driver's License ("CDL") for which he was no longer eligible, he was permitted to return to work with no changes in pay or benefits.

Moss points to various incidents that he alleges amount to violation of his rights. On March 5, 2010, he was reprimanded for allegedly revealing the salary of a Pennyrile engineer in violation of the company policies, which demand confidentiality regarding employee salaries. (Docket No. 1 at 3.) He was suspended for three days without pay and was written up for breaking company policy. (Docket No. 1 at 4.)

Upon returning to work on March 11, 2010, Moss was disallowed from entering the lineman's quarters and from attending safety meetings. (Docket No. 1 at 3.) Moss also notes that he alone was allowed to enter his office or use his computer, to the exclusion of other employees. (Docket No. 1 at 4.)

In May 2010, Todd Adler, a Pennyrile engineer, entered Moss's office and used his computer. (Docket No. 1 at 4.) The next day, Mark Wilkins, the Russellville district office

---

not respond to the summary judgment motion on these claims, they will be deemed abandoned. *See Graham v. Am. Cyanmid Co.*, 350 F.3d 496, 506 (6th Cir. 2003).

manager, told Moss that if he dropped his complaint that Adler had used his computer, no action would be taken against him. Moss then abandoned his complaint. (Docket No. 1 at 4.)

On May 10, 2010, Moss learned that he was again being written up for "complaining about petty things"; as a result, he was suspended for five days without pay and cautioned to let Pennyrile's management oversee the warehouse's day-to-day operations and personnel issues. (Docket No. 1 at 4.)

Moss later informed supervisors that he was occasionally unable to release the parking brake on the warehouse forklift because other employees were readjusting it. (Docket No. 1 at 4.) Moss alleges that Eston Glover, President and CEO of Pennyrile, mocked his inability to set the forklift brake. (Docket No. 1 at 5.) When Moss explained that his brain surgery left him weak, Glover allegedly told Moss that he would be terminated if he submitted any additional complaints. (Docket No. 1 at 5.) Moss alleges that he was "retaliated against, mocked, and harassed in regard to his inability to release the forklift brake." (Docket No. 1 at 5.)

Moss encountered numerous personal issues with his coworkers, many of them minor; Pennyrile's impression of Moss was that he was an "agitator" who "like[d] to watch and report and cause trouble for other employees," peeking through windows doors to watch his coworkers. (Docket No. 32-7 at 5.) For example, on May 13, 2010, as Moss was attempting to leave the Pennyrile premises through the company's traffic gate, two Pennyrile employees—James Dossett and Phillip Adler—were apparently blocking the gates with their vehicles as they conversed with each other. As a result, Moss and those in the traffic line behind him were unable to exit the premises. Moss called Wilkins, reporting that although those involved had said nothing to him, he felt threatened and wanted to contact the local sheriff's office. The

situation was resolved without the involvement of law enforcement when Dossett moved his vehicle a short time later. (Docket No. 1 at 6.)

Largely as a result of Moss's repeated complaints and reports, on May 20, 2011, he was relocated to Pennyrile's Hopkinsville office. (Docket No. 1 at 6.) Pennyrile explains that this move resulted from Moss's ongoing personal issues with his coworkers and was designed to "eliminate the Russellville men from Bobby's worksite, allowing his fears to be removed." (Docket No 32-2, Exh. 21.) Additionally, the Hopkinsville warehouse was undergoing a reorganization and needed additional men to expedite the process. (Docket No 32-2, Exh. 21.) However, when Moss reported to work at the Hopkinsville warehouse, he immediately refused to perform certain tasks that other warehousemen performed, including mopping the floor and mowing the grass. (Docket No. 32-1 at 16.)

When the Hopkinsville reorganization was complete, Pennyrile management opted to transfer Moss to Cadiz rather than returning him to Russellville. Pennyrile indicates that he was transferred in an effort to find appropriate work for him, not for punitive reasons; the company notes that Moss suffered no reduction in pay or benefits. (Docket No. 32-1 at 18.) Moss's complaints resumed upon beginning his tenure at Cadiz: he complained of spiders, refused to move heavy objects, and said that his medication left him drowsy and unable to work. (Docket No. 32-2, Exh. 25.) Additionally, Moss allegedly made threatening statements resulting from his conversation with Glover regarding the forklift over a year earlier, warning that "[Glover] is going to pay for that." (Docket No. 32-7 at 16.) He also allegedly threatened to have Pennyrile's entire Board of Directors replaced. (Docket No. 32-7 at 16.)

During a meeting on September 16, 2011, Pennyrile management initiated a meeting to review Moss's work history, inquire into his repeated complaints, and clarify the threats to Glover and the Board of Directors. (Docket No. 32-1 at 19.) When Moss refused to provide satisfactory answers, he was given the option to either resign or be terminated. The meeting ended in Moss's termination. (Docket No. 32-1 at 20.) Glover testified that although he did not begin the meeting with the intention of firing Moss, "when you got a person there that you have got probably fifty people that have stated things and he denies them, I made a decision in the meeting that he could either retire or he could find another job." (Docket No. 32-6 at 12.)

On January 18, 2012, Moss signed a perfected charge of discrimination with the EEOC; Pennyrile received the perfected charge on January 26, 2012. In the perfected charge, Moss explains his grounds for seeking recourse: "I believe I have been discriminated against by being harassed; held to different terms and conditions of employment; reassigned and retaliated against for complaining against the reassignment, because of my disability and/or regarded as disabled, in violation of the Americans with Disabilities Act of 1990." (Docket No. 33, Exh. A.) He alleged that the earliest incidence of discrimination occurred on March 5, 2010. (Docket No. 33, Exh. A.) The EEOC issued Moss a right to sue letter on August 22, 2012. (Docket No. 33, Exh. B.)

Moss now claims that he was discriminated against, harassed, and retaliated against because of his disability. (Docket No .1 at 6.) He seeks lost wages, lost benefits, and damages for mental pain and suffering. (Docket No. 1 at 7.)

## Legal Standard

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), abrogated on other grounds by *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012).

## Discussion

When a plaintiff relies solely upon circumstantial evidence of disparate treatment, the *McDonnell Douglas* burden-shifting framework applies at the summary judgment phase. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir. 2007). The framework involves

three stages of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). First, the plaintiff must establish a prima facie case of discrimination. *Macy*, 484 F.3d at 364 (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)). The burden next shifts to the defendant, who must show a "legitimate, nondiscriminatory reason for its action." *Id.* If the defendant satisfies this requirement, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is "actually a pretext for unlawful discrimination." *Id.*

Summary judgment is appropriate only if there is insufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry. *Macy*, 484 F.3d at 364 (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000). Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### I. Moss's status as "disabled"

The ADA prohibits employers from discriminating against employees based on their disabilities if they are otherwise qualified to perform their jobs. *Howard v. Magoffin County Bd. of Educ.*, 830 F. Supp. 2d. 308, 314 (E.D. Ky. 2011). To establish a prima facie case, Moss must show that (1) he is a member of a protected class, i.e., that he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knew or had reason to know of his disability; and (5) the employer either replaced him or left the position open while seeking other applicants. *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (quoting *Macy*, 484 F.3d at 365. Pennyrile is entitled to summary judgment on Moss's ADA claim, as he cannot establish a prima facie case of disability discrimination.

A threshold question is whether Moss is disabled within the meaning of the ADA. To be "disabled" under the ADA, an individual must (1) have a physical or mental impairment that "substantially limits" him or her in at least one "major life activity," (2) have record of such an impairment, or (3) be regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). "There is no blanket rule for determining when a claimant is disabled. 'Congress intended the existence of a disability to be determined in . . . a case-by-case manner.'" *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (quoting *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 185 (2002)).

Moss alleges that he suffered a disability given his lack of strength, memory loss, and inability to obtain a CDL. (Docket No. 39 at 16.) He asserts that these circumstances constituted a disability. (Docket No. 39 at 16.) However, Moss offers no evidence that his condition substantially limits a major life activity that would render him disabled under the ADA's definition of the term. He asserts no physical or mental impairment that substantially limits a major life activity. Instead, his own admission and the record as a whole reflect the fact that Moss was not disabled within the meaning of the ADA. At deposition, Moss testified:

> Q: Okay, you're not contending that – that you had an impairment or a disability while you were at work at Pennyrile, are you, based on your answers to interrogatories?
>
> A: I mean, -- nope.

His answers to interrogatories echoed this theme:

> 24. If you claim you are now suffering from a disability or impairment, please state the nature of such.
>
> RESPONSE: None.

Moreover, Moss was not under the care of a physician for the treatment of any injuries or conditions he referenced. (*See* Docket No. 33-6 at 7.) Although he may have been physically impaired, "[t]emporary, non-chronic impairments of short duration, with little or no long term impact, are usually not disabilities." 29 C.F.R. Pt. 1360 App. Moss's work restrictions were in place only for the first three months following his return after surgery; after this time, he was released to work without restrictions. (Docket No. 33-8 at 7.) Consequently, there is no evidence that Moss suffered from an impairment that substantially limited a major life activity so as to render him disabled within the ADA's parameters.

Likewise, Moss has failed to produce evidence that he has a record of an impairment. *See* 29 C.F.R. § 1630.2(k) (stating that a person is disabled by having a record of an impairment when he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."). As an initial matter, the Court notes that Moss did not properly assert a record of disability theory in the Perfected Charge he filed with the EEOC. "Federal courts do not have subject matter jurisdiction of Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). This regulatory requirement of precision facilitates EEOC's "attempt to obtain voluntary compliance with the law" and "notif[ies] potential defendants of the nature of plaintiff's claims and provide[s] them the opportunity to settle the claims." *Id.* Although a complaint need not use "the exact wording which might be required in a judicial pleading," plaintiffs are not "excused from filing charges on a particular discrimination claim before suing in a federal court." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998). When a claim is not

included in the EEOC charge, it generally cannot be raised in a lawsuit. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).

This principle precludes Moss's failure to accommodate charge. Moss did not explicitly state in his Perfected Charge of Discrimination that Pennyrile failed to accommodate his disability, nor does such a claim reasonably grow out of the facts he asserted. Rather, his charge focuses solely on harassment, retaliation, and termination claims, which do not share dates or relevant facts with accommodation claims.[2] Nothing in the charge references Pennyrile's failure to accommodate Moss's disability. Accordingly, he has not exhausted his administrative remedies as to this theory.

Furthermore, the record reflects no medical proof supporting a record of disability theory, as there is no indication that his condition substantially limited a major life activity. Therefore, because Moss has failed to present evidence that he has a record of an impairment that substantially limits a major life activity, he is not disabled under the ADA's second definition of disability. *See Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 Fed. Appx. 320, 327 (6th Cir. 2004).

Finally, Moss argues that even if he is not "disabled" according to the above two definitions, Pennyrile nonetheless regarded him as disabled and treated him accordingly; that is, that Pennyrile retaliated against him and treated him with hostility because Glover believed that Moss could not obtain a CDL. (Docket No. 39 at 8.) The Supreme Court has held that there are

---

[2] Facts relevant to a claim for failure to accommodate include an employee's need for assistance performing job tasks, the employer's knowledge of such a need, the employee's request for help, the employer's refusal to help, and resultant injuries. By contrast, facts relevant to a claim for improper termination include an employee's disability, his absence for work due to his disability, the employer's policy on permissible leave, the reasons given for the employee's termination, and the employee's ability to return to work. *See Jones v. Sumser Retirement Village*, 209 F.3d 851, n.1 (6th Cir. 2000).

two ways in which an individual can be regarded as disabled: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) (overruled on other grounds).

Moss has not established that Pennyrile knew or believed that he was disabled. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1181 (6th Cir. 1993) (reasoning that if the defendant was unaware of plaintiff's disability, then the handicap could not have been a reason for plaintiff's dismissal, causing his prima facie case to fail). Moss has made no showing that Pennyrile discriminated against him because of a belief that he was disabled. He admits that Pennyrile management never suggested that he was being fired because of his lack of strength or memory loss. (Docket No. 33-8 at 69.) Moreover, no evidence of record supports the proposition that any adverse action was taken because Moss lacked a CDL. Instead, voluminous deposition testimony indicates that no one considered him to be disabled because he did not have a CDL.[3] Moss has presented no evidence contradicting such testimony and has not established his prima facie case.

## II.     Reasonable accommodation

Even had Moss demonstrated that he has a disability that substantially limits a major life activity, the record reflects that Moss never requested an accommodation. "An employee who

---

[3]Glover testified that he was unaware that Moss claimed a loss of strength until Moss filed the instant lawsuit. (Docket No. 33-9 at 21.) He explained that Pennyrile abided by Moss's medical documentation, none of which suggested that Moss was any weaker. (Docket No. 33-9 at 20.) Michelle Small, Pennyrile's Vice President of Human Resources, echoed Glover's testimony, explaining that Moss never requested an accommodation or complained that he was unable to perform his job. (Docket No. 33-10 at 11-12.) Of numerous other deponents, none testified that they discerned Moss's weakness or memory loss. (*See* John Wapole Dep. at 4; John Baugh Dep. at 5, 7; Freddie Powell Dep. at 11, 19; Mark Venable Dep. at 6-7; Chris Knight Dep. at 26; Robin Bybee Dep. at 49-50, 60; Ali Cotton Dep. at 11, 17; Jeff White Dep. at 6-7).

contends that he is otherwise qualified within a reasonable accommodation bears the initial burden to propose an accommodation and show that the accommodation is objectively reasonable." *Cash v. Siegel-Robert, Inc.*, 2013 WL 6231791 (6th Cir. 2013). The record indicates that Moss did not inform Pennyrile that he required an accommodation, nor did he propose a reasonable accommodation or request a transfer. Having not fulfilled this responsibility, Moss has not produced sufficient evidence to raise a jury question regarding his reasonable accommodation claim. Therefore, he did not satisfy the second element of his prima facie case. *See Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2002). Accordingly, summary judgment is appropriate.

### III. Pretextual motivations

Additionally, even if Moss had established his prima facie case, raising a rebuttable presumption that he was discharged due to his disability, he has not carried the *McDonnell Douglas* burden to demonstrate that Pennyrile's proffered legitimate reasons for terminating him are pretextual. The *McDonnell Douglas* framework requires a plaintiff to demonstrate a nexus between the adverse action and his disability. *Macy*, 484 F.3d at 364 (citing *McDonnell Douglas*, 411 U.S. at 802; *Monette*, 90 F.3d at 1177-86). To prove that Pennyrile's stated reasons are pretextual, Moss must show that Pennyrile's asserted reasons lack any basis in fact, that they did not motivate his transfer or discharge, or that they were insufficient to motivate the transfer or discharge. *Harris*, 594 F.3d at 486 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Moreover, Pennyrile has offered proof of numerous legitimate, nondiscriminatory reasons for Moss's transfer and termination. The company points to Moss's long history of misconduct and threats against Glover and the Pennyrile Board of Directors. (Docket No. 46 at

10.) Pennyrile has established that it terminated Moss because he repeatedly proved unable to work professionally with other employees, because he was often aggressive and threatening to his colleagues and management, and because he had engaged in a pattern of behavior that led management to doubt his ability to serve as an effective employee. Moss was continually reprimanded and warned by his supervisors that his unprofessional attitude and poor performance was cause for concern. These reasons justify Moss's termination. *See Harris v. Metro. Gov't of Nashville*, 594 F.3d 476, 486 (6th Cir. 2010) (holding that an employer had a legitimate reason not to renew an employee's appointment because the employee breached confidentiality and exhibited poor work performance); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (holding that an employee's physical threat to coworkers and supervisors constituted a legitimate nondiscriminatory reason for his termination).

Moss has set forth insufficient evidence to raise a factual dispute that Pennyrile terminated him for reasons other than his poor work performance. Although he argues that Pennyrile mounted a multi-year campaign to oust him, he fails to demonstrate pretext. Moss alleges that the numerous disciplinary actions and peculiar interactions he confronted were intended to harass him, tarnish his reputation, and facilitate his forced resignation. However, even if such improper and trivial aims existed, they would nonetheless not violate the ADA, as he must demonstrate that Pennyrile's purported motives were a pretext for underlying discriminatory reasons. "Showing pretext is not the same as showing pretext for discrimination." *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 814 (6th Cir. 1999). And while he testified that fellow employees bullied him by mocking his inability to release the forklift brake and committing other breaches of protocol, he offers no proof that his suspensions, transfers, or ultimate termination shared any connection with a perceived disability by his coworkers. *See*

*Mitchell v. Fowler Foods*, 2013 WL 1508293, at *3 (W.D. Ky. Apr. 10, 2013). Therefore, even if Moss could establish his prima facie case, Pennyrile is nonetheless entitled to summary judgment.

## IV. Retaliation

To establish a claim for retaliation, Moss must show that (1) he engaged in protected activity; (2) that this exercise of protected rights was known to Pennyrile; (3) that he suffered adverse employment action; and (4) that a causal connection existed between the protected activity and the adverse employment action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (citations omitted). To establish a causal connection, Moss must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action."

Moss relies upon a "temporal proximity" theory to indicate that Moss was transferred and ultimately terminated because he was unable to retain a CDL. (Docket No. 39 at 19.) Sixth Circuit law dictates that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* The Court of Appeals explained this distinction: "[I]f an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened

14

consecutively, and little other than the protected activity could motivate the retaliation." *Id.* (citing *Cardenas v. Massey*, 269 F.3d 251, 264 (3d. Cir. 2001) ("[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not unusually suggestive.")).

Here, even if Moss had pointed to a protected activity, the allegation of temporal proximity is not sufficiently significant to establish a causal connection between his transfer or termination and his alleged disability. Moss underwent surgery on October 15, 2008 and suffered a seizure on December 26, 2009. Upon his return to work, he was suspended twice in 2010, was transferred to the Hopkinsville office on May 20, 2011, and was terminated on September 16, 2011. (Docket No. 39 at 4.) The Court concludes that this is not the type of immediate retaliation contemplated under *Mickey*. Accordingly, Pennyrile is entitled to summary judgment on Moss's retaliation claim.

## CONCLUSION

Pennyrile has moved for summary judgment on Moss's claims. For the foregoing reasons, Pennyrile's Motion for Summary Judgment is GRANTED. An appropriate order shall issue.